No. 22-30352

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Jerry Rogers, Jr.,
*Plaintiff-Appellee,*
v.
Randy Smith, Danny Culpepper, and Keith Canizaro,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
The Honorable Jane T. Milazzo
Case No. 2:20-CV-517

### Brief of *Amicus Curiae*
### Foundation for Individual Rights and Expression (FIRE)
### in Support of Plaintiff-Appellee

Eugene Volokh*
First Amendment Amicus Brief Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

* Counsel thanks Asim Zaidi, Katarina Rusinas, and Valentino Gorospe, UCLA School of Law students who worked on the brief.

# Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Jerry Rogers, Jr., Plaintiff-Appellee

2. William Most, Most & Associates

3. Hope Phelps, Most & Associates

4. David Lanser, Most & Associates

5. Randy Smith, Sheriff, Defendant-Appellant

6. Danny Culpepper, Defendant-Appellant

7. Keith Canizaro, Defendant-Appellant

8. Chadwick Collings, Milling Benson Woodward L.L.P., Counsel for Defendant-Appellants

9. Sarah Fisher, Milling Benson Woodward L.L.P., Counsel for Defendant-Appellants

10. OneBeacon Insurance Group, LLC, insurer to Defendant-Appellants

11. Foundation for Individual Rights and Expression, *amicus curiae*, a nonprofit corporation organized under the laws of Massachusetts, which does not have any parent corporations and is not publicly traded

12. Eugene Volokh, counsel to *amicus* FIRE

s/ Eugene Volokh
Attorney for *Amicus Curiae*

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................i

Table of Contents.....................................................................................iii

Table of Authorities .................................................................................iv

Interest of *Amicus Curiae* .......................................................................1

Summary of Argument.............................................................................2

Argument ...................................................................................................5

    I.    Detective Buckner, a police officer, is a public official................5

    II.   Rogers' speech concerned an individual engaged in public affairs. ...................................................................................7

    III. The defendants are not entitled to qualified immunity because the law was clearly settled. ............................................9

Conclusion.................................................................................................13

Certificate of Compliance .......................................................................15

Certificate of Service ................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ballentine v. Tucker,* 28 F.4th 54 (9th Cir. 2022) ...................................11

*Breen v. Holmes*, 236 So.3d 632 (La. App. 1 Cir. 2017), *writ denied*, 269 So. 3d 708 (La. 2018)...........................................4

*Brown v. United States*, 256 U.S. 335 (1921) ...........................................9

*Connick v. Myers*, 461 U.S. 138 (1983) ...............................................4, 7

*Coughlin v. Westinghouse Broad. & Cable Inc.*, 780 F.2d 340 (3d Cir. 1985)..........................................................6

*Fitzgerald v. Tucker*, 737 So. 2d 706 (La. 1999) .......................................7

*Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979)......................9

*Gray v. Udevitz*, 656 F.2d 588 (10th Cir. 1981)................................3, 5, 6

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................11

*Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855 (8th Cir. 2021) .....................................................................10

*Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359 (5th Cir. 2000).........................................................8

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) ...............................12

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.,* 127 F.3d 122 (1st Cir. 1997)........................................................................8

*McKinley v. Baden*, 777 F.2d 1017 (5th Cir. 1985) ...................................6

*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017). ...........................................7

*Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010). .........................................13

iv

*Moore v. City of Kilgore,* 877 F.2d 364 (5th Cir. 1989)..........................4, 8

*Mullenix v. Luna,* 577 U.S. 7 (2015) ................................................10

*Rankin v. McPherson,* 483 U.S. 378 (1987) ................................................9

*Rattray v. City of Nat'l City,* 51 F.3d 793 (9th Cir. 1994) ........................6

*Romero v. Abbeville Broad. Serv., Inc.,* 420 So. 2d 1247 (La. App. 3 Cir. 1982) ........................................................3, 5

*Rosenblatt v. Baer,* 383 U.S. 75 (1966) ........................................3, 5

*Salge v. Edna Indep. Sch. Dist.,* 411 F.3d 178 (5th Cir. 2005) ........................................................................7

*Sandul v. Larion,* 119 F.3d 1250 (6th Cir. 1997) ...............................13

*Sause v. Bauer,* 138 S. Ct. 2561 (2018)........................................11

*State v. Snyder,* 277 So. 2d 660 (La. 1972) ........................................2, 4

*Thompson v. Ragland,* 23 F.4th 1252 (10th Cir. 2022) ........................12

*Thompson v. St. Amant,* 250 La. 405 (1967), *rev'd on other grounds,* 390 U.S. 727 (1968) ........................................................3, 5

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended individuals' rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases implicating expressive rights under the First Amendment. *See, e.g.*, Brief of FIRE as *Amicus Curiae* in Support of Petitioner, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022); Brief of the Cato Institute, FIRE, and the ACLU of Louisiana, *Bailey v. Iles*, No. 22-30509 (5th Cir.), *pending*.

FIRE has an especially strong interest in protecting speakers from unconstitutional arrests and prosecutions. In a democratic society, the state's exercise of its police power in response to protected expression demands skepticism and scrutiny. FIRE has frequently spoken in defense

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that UCLA School of Law paid the expenses involved in filing this brief.

Plaintiff has consented to the filing of this amicus brief, but defendants have not.

of people subject to abusive government conduct in retaliation for pro-tected expression. *See, e.g.*, Adam Steinbaugh, *UConn: We Can't Stop The Unconstitutional Process Our Police Started*, FIRE (Nov. 1, 2019), https://bit.ly/3Hc5Hqj.

## SUMMARY OF ARGUMENT

Rogers criticized a St. Tammany Parish Sheriff's Office detective—so the detective's colleagues at the St. Tammany Parish Sheriff's Office procured an arrest warrant against Rogers for criminal libel. Yet for 50 years, Louisiana courts have recognized that the criminal defamation statute does not apply to "public officials, public figures, and private in-dividuals who are engaged in public affairs," *State v. Snyder*, 277 So. 2d 660, 668 (La. 1972) (opin. on rehearing). Indeed, the District Attorney's office had specifically advised the officers that "charges against Plaintiff would be unconstitutional." ROA.2045.

The officers, though, neglected to mention the DA's legal analysis in the affidavit supporting the arrest warrant. *Id.* As a result, Rogers was arrested for speech that has long been established to not be a crime under Louisiana law. That violated the Constitution.

1.    Rogers' speech was not illegal, given the holding of *Snyder*, because courts have repeatedly found police officers to be public officials in defamation claims. A government official is a public official if he has, "or appear[s] to the public to have, substantial responsibility for or control over the conduct of government affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). Because Buckner was a police officer and the lead investigator in a murder trial, he was a public official. *Thompson v. St. Amant,* 196 So. 2d 255, 260 (1967) (holding that "a deputy sheriff, is a 'public official' within the meaning of the rule announced in the New York Times [c]ase"), *rev'd on other grounds*, 390 U.S. 727 (1968); *see also Romero v. Abbeville Broad. Serv., Inc.*, 420 So. 2d 1247, 1250 (La. App. 1982) (reaffirming this statement from *St. Amant*, 196 So. 2d at 1249–50, in a case involving speech about a "deputy sheriff"); *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981) (taking the same view as to "a police officer" whose "duties were those of the normal street patrolman"; "[s]treet level policemen, as well as high ranking officers, qualify as public officials"). And because Buckner was a public official, the police defendants did not have probable cause to arrest Rogers.

2.    *Snyder* also makes clear that the Louisiana's criminal defamation statute does not apply to the "expression and publication concerning . . . private individuals who are engaged in public affairs." *Snyder*, 277 So. 2d at 668. Public affairs include "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Because Rogers' speech was about a detective involved in a high-profile murder investigation, it concerned a person engaged in public affairs. *See Moore v. City of Kilgore,* 877 F.2d 364, 371 (5th Cir. 1989) (the very fact of "media coverage" of the matter concerned indicated that "the public was receptive and eager to hear" speech about the matter, which "leads us to conclude that his speech involves a matter of public concern"); s*ee also Breen v. Holmes*, 236 So.3d 632, 637 (La. App. 1 Cir. 2017) (reasoning that "[a] [murder] investigation alone can be a matter of public concern" and "[t]he fact that [the plaintiff] was not arrested or charged, and a grand jury decided not to indict her, does not remove the matter from public concern"), *writ denied*, 269 So. 3d 708 (La. 2018).

3.    Defendants' conduct thus violated Rogers' clearly established rights, so Defendants are also not entitled to qualified immunity.

## ARGUMENT

## I.  Detective Buckner, a police officer, is a public official.

A government official, such as a police officer, is a public official if he has, "or appear[s] to the public to have, substantial responsibility for or control over the conduct of government affairs." *Rosenblatt*, 383 U.S. at 85. Courts have repeatedly found police officers to be public officials for purposes of defamation law. *St. Amant*, 196 So. 2d at 260–61 (reasoning that "a deputy sheriff, is a 'public official within the meaning of the rule announced in the New York Times [c]ase" because deputies have "substantial responsibility for or control of governmental affairs at least where law enforcement and police functions are concerned" (cleaned up)); *see also Romero*, 420 So. 2d at 1249–50 (reaffirming this holding from *St. Amant*).

On-duty police officers are public officials because they are "visible to the public" and "possess[] both the authority and the ability to exercise force." *Udevitz*, 656 F.2d at 591. They are public officials regardless of their rank. *Id.*; *see also McKinley v. Baden*, 777 F.2d 1017, 1021 (5th Cir.

1985) (finding city police officer to be a public official); *Coughlin v. West-inghouse Broad. & Cable Inc.*, <u>780 F.2d 340, 342</u> (3d Cir. 1985) (same); *Rattray v. City of Nat'l City,* <u>51 F.3d 793, 800</u> (9th Cir. 1994) (same).

Here, Rogers' speech was about Detective Daniel Buckner, a police officer employed by the sheriff's office. Buckner was the lead investigator in a murder investigation, and he had substantial control over the investigation. His job was to investigate and make an arrest for a murder that had been covered by the media. Buckner's role "was visible to the public," and "[h]e possesse[d] the authority and the ability to exercise force." *Udevitz*, <u>656 F.2d at 591</u>. Buckner was therefore a public official.

Because Buckner was a public official and the Louisiana Supreme Court has made clear that the criminal defamation statute cannot be applied to public officials, the defendant police officers did not have probable cause to arrest Rogers. As this Court held in *McLin v. Ard* (citing *Snyder*), (1) "the Louisiana Supreme Court also recognized the unconstitutionality of the [criminal defamation] statute when it circumscribes speech about public officials," (2) such speech thus "does not constitute criminal defamation," and (3) an arrest for such speech is therefore "an unreasonable seizure because the Defendants could not have believed

they had probable cause to arrest" the speaker. 866 F.3d 682, 695 (5th Cir. 2017).

## II. Rogers' speech concerned an individual engaged in public affairs.

Even if Detective Buckner was not a public official, Rogers' speech is not, in light of *Snyder*, covered by the criminal defamation statute because the speech concerns a person involved in public affairs. For 50 years, the criminal defamation statute has been held inapplicable to "expression and publication concerning . . . private individuals who are engaged in public affairs." *Snyder*, 277 So. 2d at 668.

"Speech on matters of public concern"—also commonly referred to as "speech concerning public affairs"—includes "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 145–46; *see also Fitzgerald v. Tucker*, 737 So. 2d 706, 720 (La. 1999) (likewise using the terms "public concern" and "public affairs" interchangeably). "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court," *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005), and the answer to this question here is "yes."

A matter of public affairs is something that is the subject of legitimate news interest. The "relevant community," for purposes of evaluating whether a matter is of public concern, "need not be very large and the relevant concern need not be of paramount importance or national scope." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.,* 127 F.3d 122, 132 (1st Cir. 1997). Even speech conveyed in private may be considered "public in nature," so long as it would inform the populace of "more than the fact of a [personal] grievance." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000).

Here, the presence of "news coverage of the murder investigation" (ROA.2045) further demonstrates that the investigation was part of "public affairs." *See Moore*, 877 F.2d at 371 (5th Cir. 1989) ("[w]hile many cases touching the First Amendment may not receive media coverage," the presence of media interest makes the case "even simpler"). Rogers' commentary regarding the qualifications of a law enforcement officer involved in the investigation is therefore speech concerning public affairs. And the content remains related to public affairs even though Rogers' speech was conveyed via private communications. *See Rankin v. McPher-*

*son,* 483 U.S. 378, 389 (1987) (determining that statement made in a private conversation between only two employees was speech on a matter of public concern); *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979) (holding that speech was constitutional protected speech on a matter of public concern even when the speaker "communicate[d] privately with [her] employer rather than . . . spread[ing her] views before the public").

## III. The defendants are not entitled to qualified immunity because the law was clearly settled.

As the District Court correctly held, "no reasonable officer could have believed that probable cause existed where the unconstitutionality of Louisiana's criminal defamation statute as applied to public officials"—and, *amicus* would add, anyone involved in "public affairs"—"has long been clearly established and where the officers had been specifically warned that the arrest would be unconstitutional." ROA.2051. Nor was this a split-second decision in the heat of a violent encounter, in which law enforcement officials may sometimes act without "detached reflection," *Brown v. United States*, 256 U.S. 335, 343 (1921); *see also Intervarsity Christian Fellowship / USA v. Univ. of Iowa*, 5 F.4th 855, 867 (8th Cir.

2021) (approvingly quoting Justice Thomas' suggestion that most government officials should not "receive the same protection [under qualified immunity] as a police officer who makes a split-second decision to use force in a dangerous setting" (*Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., respecting denial of certiorari)); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (noting that the "factual situation the officer confronts" bears upon the level of specificity required in the context of qualified immunity).

Further, as the District Court noted, the presence of a warrant "does not guarantee qualified immunity" here. ROA.2051. Because the officers "had been specifically warned that the arrest would be unconstitutional," "no reasonably competent officer would have concluded that a warrant should issue." *Id*. Though they were aware of this defect, the officers failed to bring it to the judge's attention:

> [T]he warrant application for Plaintiff's arrest omitted key information when it failed to advise the judge regarding the DA's position that the arrest would be unconstitutional. Both the judge and Sheriff Smith testified that the information provided by the DA should have been included in the affidavit in support of the arrest warrant.

(ROA. 2051.)

Indeed, courts have often denied qualified immunity for violations of First Amendment rights even in the absence of precedents that are squarely on point. "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cleaned up) (so holding as to the Eighth Amendment). By extension, where First Amendment principles "apply with obvious clarity" to show a constitutional violation any reasonable official would recognize, that is "fair warning" of a violation and meets the "clearly established" benchmark. For instance, the Supreme Court reversed and remanded as to qualified immunity for officers who ordered a woman to stop praying, recognizing that "[t]here can be no doubt that the First Amendment protects the right to pray," *Sause v. Bauer*, 138 S. Ct. 2561, 2562 (2018) (per curiam), without citing a case in support. *Id.*

More recently, a federal appeals court denied qualified immunity to a detective after he arrested activists for "chalking" anti-police messages on public sidewalks. *Ballentine v. Tucker,* 28 F.4th 54, 66 (9th Cir. 2022). Though the court found no factually identical case, it held that the First

11

Amendment right to be free from retaliatory arrest was clearly established. *Id.* And another court similarly denied qualified immunity to a college administrator who punished a student for criticizing a professor over email, even though the court found no case with identical facts. *Thompson v. Ragland*, 23 F.4th 1252, 1255–56, 1259–60 (10th Cir. 2022) ("But the law was clear that discipline cannot be imposed on student speech without good reason.").

Those decisions exemplify how clearly established First Amendment principles provide more than enough "fair warning" to overcome qualified immunity. This rule applies equally to officials who use state statutes to criminalize constitutionally protected speech. For example, there is no qualified immunity for arresting a person who utters profanity in violation of a state statute against swearing in public. *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) ("[I]t cannot be seriously contended that any reasonable peace officer, or citizen, for that matter, would believe that mild profanity while peacefully advocating a political position could constitute a criminal act."); *see also Sandul v. Larion*, 119

F.3d 1250, 1256–57 (6th Cir. 1997) (denying qualified immunity to a police officer who arrested a person for a vulgarity coupled with a vulgar gesture).

Nor does qualified immunity shield officials who rely on a criminal defamation statute to arrest a student blogger for what every reasonable officer would know is plainly protected satire. *Mink v. Knox*, 613 F.3d 995, 1009–10 (10th Cir. 2010). And it is even clearer that qualified immunity is improper here, where there is squarely on-point Louisiana precedent that makes clear that Rogers' conduct was simply not a crime.

## CONCLUSION

Rogers' speech was about the lead police investigator in a murder trial—a public official, or at least someone engaged in public affairs. In either instance, Louisiana law has long clearly held that the speech was not punishable under the criminal defamation statute. Thus, the police defendants did not have probable cause to arrest Rogers, and the district court decision should be upheld.

Respectfully Submitted,

s/ Eugene Volokh

Attorney for *Amicus Curiae*
Foundation for Individual Rights and
Expression
First Amendment Amicus Brief Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

## CERTIFICATE OF COMPLIANCE

This brief complies with contains 2,529 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and is in a proportionally spaced typeface, 14-point Century Schoolbook.

s/ Eugene Volokh
Attorney for *Amicus Curiae*


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amicus Curiae* with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on Jan. 23, 2023.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: Jan. 23, 2023

s/ Eugene Volokh
Attorney for *Amicus Curiae*